**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | | |
|---|---|---|
| KHANH GIANG, | ) | No. SA CV 18-910-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL, DEPUTY | ) | |
| COMMISSIONER OF OPERATIONS | ) | |
| FOR THE SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 29, 2018, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on May 31, 2018, and June 18, 2018. Pursuant to the Court's Order,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

the parties filed a Joint Submission (alternatively "JS") on January 7, 2019, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on April 1, 1961. [Administrative Record ("AR") at 139.] He has past relevant work experience as a store laborer. [AR at 17, 199.]

On October 31, 2014, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since August 6, 2012. [AR at 10; see also AR at 139-49.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 78-79.] A hearing was held on May 16, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf, with the assistance of a Vietnamese interpreter. [AR at 27-38.] A vocational expert ("VE") also testified. [AR at 35-37.] On June 13, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from August 6, 2012, the alleged onset date, through June 13, 2017, the date of the decision. [AR at 10-18.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 135-36.] When the Appeals Council denied plaintiff's request for review on March 30, 2018 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsbury,

468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2.  Lounsbury, 468 F.3d at 1114.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 6, 2012, the alleged onset date.[2]  [AR at 12.]  At step two, the ALJ concluded that plaintiff has the severe impairments of tendonitis of the right wrist, and degenerative disc disease of the

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.  [AR at 12.]

4

lumbar spine.[3]  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work as defined in 20 C.F.R. § 404.1567(c),[5] as follows:

> [C]an lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; he can sit for 6 hours out of an 8-hour workday with regular breaks; he can frequently climb[,] balance, stoop, kneel, crouch, and crawl; and frequently perform gross manipulations with the right upper extremity.

[AR at 13.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a store laborer as generally performed.  [AR at 17, 35, 199; see also Dictionary of Occupational Titles No. 922.687-058.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of August 6, 2012, through June 13, 2017, the date of the decision.  [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he:  (1) considered plaintiff's subjective symptom testimony regarding his pain and limitations; and (2) considered the opinion of plaintiff's treating neurologist and pain management specialist, Mumtaz A. Ali, M.D.  [JS at 1-2.]  As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[3]   It appears that plaintiff also alleged disability due to heel pain.  [See, e.g., AR at 158; see also AR at 210, 211, 253.]  Although the ALJ noted that plaintiff had been diagnosed with bilateral plantar fasciitis [AR at 14 (citing AR at 211)], he did not address plaintiff's heel pain or treatment for it.  Plaintiff did not raise this issue in the JS.

[4]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5]   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

## A. SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 2-10, 17-21.]

The ALJ summarized plaintiff's testimony as follows:

> At the administrative hearing, [plaintiff] alleged he was unable to work due to back and right wrist pain. He claimed back and right wrist pain affected his ability to sit, stand, walk, lift, and hold objects. He explained he could sit up to 10 to 15 minutes, walk one block, and lift 10 pounds. He stated he had difficulty bending, stooping, and holding objects for a long time. [He] reported that on a typical day he took his son to school, drove, and prepared dinner. He stated he did not have a problem putting on a shirt but had difficulty putting on pants.

[AR at 13.]

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the records for the reasons explained" in the decision. [AR at 13.] He also noted that plaintiff's subjective complaints "do not persuasively establish a more restrictive functional capacity." [AR at 13-14.] The ALJ discounted plaintiff's subjective symptom testimony as follows:

> First, [plaintiff] alleged in the Function Report that he was unable to work because he could not sit or stand in one position without feeling [heel and back] pain and wrist pain. In spite of these allegations, [he] described an ability to do normal activities. For example, he wrote in the Function Report that he drove his son to and from school, prepared simple meals on a daily basis, washed dishes, shopped in stores, and paid bills. Second, [he] has not generally received the type of wrist and back treatment one would expect for a totally disabled individual. Treatment notes indicated [he] merely received conservative forms of treatment: trigger point injections, ibuprofen, and gabapentin. Accordingly, the undersigned finds [plaintiff's] allegations regarding his signs and symptoms do not establish greater limitations than those assessed in the residual functional capacity.
>
> . . . .
>
> In sum, the evidence as a whole supports the [RFC] assessed by this decision. [Plaintiff's] subjective complaints are not fully consistent with the medical evidence and the objective medical evidence does not support the alleged severity of the symptoms.

[AR at 14, 16 (citing AR at 170-77, 257, 287); see also AR at 158.]

/

/

/

1          **1.    Legal Standard**

2          Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[6] became

3   applicable.  See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[7]  SSR 16-3p supersedes SSR

4   96-7p, the previous policy governing the evaluation of subjective symptoms.  SSR 16-3p, 2017

5   WL 5180304, at *2.  SSR 16-3p indicates that "we are eliminating the use of the term 'credibility'

6   from our sub-regulatory policy, as our regulations do not use this term."  Id.  Moreover, "[i]n doing

7   so, we clarify that subjective symptom evaluation is not an examination of an individual's

8   character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom

9   evaluation."  Id.; Trevizo, 871 F.3d at 678 n.5.  Thus, the adjudicator "will not assess an

10  individual's overall character or truthfulness in the manner typically used during an adversarial

11  court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine

12  whether he or she is a truthful person."  SSR 16-3p, 2017 WL 5180304, at *11.  The ALJ is

13  instructed to "consider all of the evidence in an individual's record," "to determine how symptoms

14  limit ability to perform work-related activities."  Id. at *2.  The Ninth Circuit also noted that SSR 16-

15  3p "makes clear what our precedent already required:  that assessments of an individual's

16  testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the

17  ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably

18

19          ───────────────────

20          [6]    "SSRs do not have the force of law.  However, because they represent the Commissioner's
    interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs

21  if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202
    n.1 (9th Cir. 2001) (citations omitted).

22          [7]    SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017,

23  with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28,
    2016."  See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR

24  16-3p, 2017 WL 5180304 (Oct. 25, 2017).  Other than also updating "citations to reflect [other]
    revised regulations that became effective on March 27, 2017," the Administration stated that SSR

25  16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements
    regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ."  Id.

26  The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent.  Trevizo v.

27  Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit]
    precedent already required").  While SSR 16-3p eliminated the use of the term "credibility," case

28  law using that term is still instructive in the Court's analysis.

be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina

8

v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's testimony, the ALJ found the following: (1) plaintiff's subjective symptom complaints "are not entirely consistent with the medical evidence" [AR at 13] and "are not fully consistent with the medical evidence and the objective evidence does not support the alleged severity of the symptoms" [AR at 16]; (2) plaintiff "described an ability to do normal activities"; and (3) plaintiff has not "generally received" the type of treatment that "one would expect for a totally disabled individual." [AR at 13-14.]

### 2. Boilerplate Language

The ALJ found that plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms were "not *entirely* consistent with the medical evidence," and "do not persuasively establish a more restrictive" RFC. [AR at 13-14 (emphasis added).] He also concluded that plaintiff's complaints "are not *fully* consistent with the medical evidence and the objective medical evidence does not support the alleged severity of symptoms." [AR at 16 (emphasis added).]

Plaintiff argues that such boilerplate language has been disapproved of in a number of cases. [JS at 3-4 (citing Bjornson v. Astrue, 671 F.3d 640, 644-46 (7th Cir. 2012); Laborin v.

Berryhill, 867 F.3d 1151, 1154-55 (9th Cir. 2017)).] Specifically, he argues that the ALJ cannot require plaintiff's testimony to be either "entirely consistent" or "fully consistent" with the evidence in order to find him credible, and that the ALJ's finding that the testimony was inconsistent with the RFC "adds nothing to the credibility analysis." [JS at 3, 4 (citing Laborin, 867 F.3d at 1154-55), 8 (citing Bjornson, 671 F.3d at 644-46), 20 (citing Bunnell, 947 F.2d at 345; Soc. Sec. Ruling 16-3p).] Defendant does not address this argument.

In Laborin, the Ninth Circuit held that "[b]ecause the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC." Laborin, 867 F.3d at 1154. Thus, the ALJ cannot "properly evaluate the claimant's credibility based on a predetermined RFC" and, to do so, "puts the cart before the horse." Id. at 1154 & n.4. That is because, without more, the Court cannot simply infer from that language "'that the ALJ rejected [the claimant's] testimony to the extent it conflicted with the medical evidence'" as summarized by the ALJ. Id. at 1154-55 (quoting Treichler, 775 F.3d at 1103) (alteration in original). Instead, the ALJ must give specific, clear, and convincing reasons for rejecting the testimony "by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.'" Id. at 1155 (quoting Brown-Hunter, 806 F.3d at 489, 494) (alteration and emphasis in original). Similarly, in the Seventh Circuit's decision in Bjornson, which was cited with approval by the Ninth Circuit in Laborin, the court held that the ALJ's boilerplate language stating that the claimant's statements "are not entirely credible," is "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony", and "fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." Bjornson, 671 F.3d at 645. The court found it even "[m]ore troubling" that "the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." Id. (citation and internal quotation marks omitted). The error, however, is not by itself reversible error and can be harmless where the ALJ

has given specific, clear, and convincing reasons for rejecting the testimony (as described by the court in Brown-Hunter, 806 F.3d at 489, 494).  Laborin, 86 F.3d at 1154 (citations omitted).

In this case, the ALJ did not find that plaintiff's testimony was "not entirely *credible*" as proscribed by Laborin, or that it was inconsistent with the *RFC* as proscribed by Bjornson. Instead, he found the testimony was not "entirely *consistent*" with the *medical evidence*, and did not "persuasively *establish*" a more restrictive RFC.  Although plaintiff appears to suggest that the former terminology implies the ALJ believed that plaintiff's testimony must be "totally" consistent with the medical evidence, the Court declines to read it this way.  Instead, it appears to the Court that the ALJ was only stating that some of that testimony was consistent with the medical evidence, while some was not.  The ALJ's statement that the testimony does not "persuasively establish" a more restrictive RFC is a closer call, however, and does seem to imply that the ALJ may have predetermined the RFC and *then* evaluated plaintiff's testimony based on that RFC. If so, then the error is not harmless because, as discussed below, in summarizing the medical evidence, the ALJ did not specifically identify "*which* testimony [the ALJ] found not credible and never explained *which* evidence contradicted that testimony."  Brown-Hunter, 806 F.3d at 494 (citation omitted).  Additionally, if the ALJ had found plaintiff limited to light work, he would have been found disabled under the Medical-Vocational Guidelines.  [See discussion below.]

Because, for the reasons discussed below, the ALJ failed to properly identify which testimony he found not "entirely consistent" or "fully consistent" with the evidence, and which evidence contradicted that testimony, the Court declines to decide whether the ALJ's language was legally insufficient as described by Laborin and/or Bjornson.

### 3.    Objective Evidence

Plaintiff observes that although the ALJ generally summarized the medical evidence, he failed to note the specific objective evidence that he found did not support plaintiff's subjective symptom allegations.  [JS at 6-10 (citing AR at 13-16).]  Plaintiff argues that not only is "full consistency" with the evidence not required, but it is "not enough to assert that the subjective complaints are inconsistent with the objective findings because pain is often greater than the

objective findings will indicate." [JS at 7 (citing <u>Bunnell</u>, 947 F.2d at 345).] Plaintiff also argues that when viewed as a whole, the record supports plaintiff's statements. [JS at 7-9 (citing AR at 209, 210, 248-49, 250, 251, 253, 257, 261, 270, 275, 282, 283, 289, 298).]

Defendant responds that "the ALJ's primary consideration is how consistent Plaintiff's self-reporting was with the objective medical evidence." [JS at 11 (citing 20 C.F.R. § 404.1529(c)(4); SSR 16-3p).] Defendant then summarizes the medical evidence and attempts to tie it to plaintiff's subjective symptom testimony -- something the ALJ failed to do. "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); <u>Pinto v. Massanari</u>, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for discounting plaintiff's subjective symptom testimony that were not given by the ALJ in the Decision. See <u>Trevizo</u>, 871 F.3d at 677 & nn. 2, 4 (citation omitted).

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the <u>only</u> basis to reject a claimant's subjective symptom testimony (<u>Trevizo</u>, 871 F.3d at 679 (quoting <u>Robbins</u>, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other

symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5. Nevertheless, as the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted); see Laborin, 867 F.3d at 1153 (ALJ's statement that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Here, the ALJ stated his conclusion that plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence and other evidence in the record." [AR at 13.] He then summarized the medical evidence, only once mentioning plaintiff's testimony -- but then only as a reason to give "great weight" to the opinions of consultative orthopedic examiner, Richard Pollis, M.D., and the State agency medical consultants, whose opinions he found to be "consistent with [plaintiff's] self-reported ability to do normal activities such as driving his son to and from school, preparing simple meals, washing dishes, and shopping in stores." [AR at 16 (citing AR at 171-73); but see discussion supra regarding plaintiff's activities.] However, as previously noted, the "ALJ must identify the testimony that [is being discounted], and specify 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added); Brown-Hunter, 806 F.3d at 493. Here, the ALJ did not identify the testimony he was discounting and "link that testimony to the particular parts of the record" supporting his determination. Brown-Hunter, 806 F.3d at 494. Indeed, the ALJ's running narrative regarding plaintiff's medical records, interspersed with one mention of plaintiff's purported daily activities, while summarizing a number of the medical records, did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected

the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony []he found not credible, and never explained *which* evidence contradicted that testimony") (citing <u>Treichler</u>, 775 F.3d at 1103, <u>Burrell</u>, 775 F.3d at 1138).

Thus, this was not a specific, clear, and convincing reason for discounting plaintiff's subjective symptom testimony. Even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. As seen below, those other grounds are insufficient as well.

### 4. Daily Activities

The ALJ found that "in spite of" plaintiff's allegation "that he was unable to work because he could not sit or stand in one position without feeling [heel and back] pain and wrist pain," he "described an ability to do normal activities," such as driving his son to and from school, preparing simple meals daily, washing dishes, shopping in stores, and paying bills. [AR at 14 (citing AR at 171-73).]

Plaintiff contends that, at the hearing, the ALJ observed that if plaintiff is limited to light work, he would be found disabled because of his deficits in language skills.[8] [JS at 4 (citing AR at 36).] He argues, therefore, that in order to find plaintiff "not credible, the ALJ must show that [plaintiff's] activities are inconsistent with light work [since he is considered disabled pursuant to the Medical-Vocation Guidelines] if he is limited to the light work exertional level." [<u>Id.</u> (citing <u>Lee v. Colvin</u>, 2016 WL 6701273, at *4 (C.D. Cal. Nov. 16, 2015)).] He contends that the few activities that he described reflect no more than light work and, therefore, they are insufficient to establish that he is not disabled. [JS at 5.]

_____

[8] This assertion appears to be based in part on the VE's testimony that if limited to light work, plaintiff would not be able to perform his past relevant work [AR at 36], and in part based on the ALJ's incomplete statement to the effect that "look[ing] to the GRIDS," plaintiff was 51 and did not speak English at the alleged onset date, which impliedly would appear to mandate a finding of disability under the Medical-Vocational Guidelines if plaintiff was limited to light work. [<u>See</u> AR at 36; <u>see</u> <u>also</u> 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.09.]

Defendant responds that "just because Plaintiff's daily activities do not challenge his physical capabilities, there is no evidence to show [he] is not capable of doing more, or that he cannot perform his past relevant work."  [JS at 14.]  Defendant asserts that plaintiff "is not suggesting he can perform light work, or even sedentary work, the basis of Plaintiff's application is that he is disabled and cannot perform <u>any</u> work whatsoever."[9]  [JS at 15.]  Thus, according to defendant, the ALJ properly found that the evidence failed to establish the kind of intensity, persistence, and limitations "characteristic of total disability."  [<u>Id.</u> (citing <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002); <u>Brown Hunter</u>, 806 F.3d at 492).]

Inconsistency between symptom allegations and daily activities may act as a clear and convincing reason to discount subjective symptom testimony.  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Bunnell</u>, 947 F.2d at 346.  But the mere fact that "a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted); <u>see</u> <u>also</u> <u>Molina</u>, 674 F.3d at 1112-13 ("While a claimant need not vegetate in a dark room . . . to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal citations and quotations omitted).  "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as []he would be by an employer."  <u>Bjornson</u>, 671 F.3d at 647

---

[9]  Under the Medical-Vocational Guidelines, a claimant may be found to be disabled based on various combinations of other factors, such as age, level of education, literacy, whether the past work was skilled or unskilled, and whether the skills were transferable, *even if* he or she can perform some exertional level of work.  <u>See</u> <u>generally</u> 20 C.F.R. pt. 404, subpt. P, app. 2.

(cited with approval in Garrison, 759 F.3d at 1016).

An ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014)).

Here, although the ALJ specifically identified the daily activities engaged in by plaintiff and found that they demonstrated that plaintiff was able to perform work within the RFC determination for medium work [AR at 14], the amount of involvement plaintiff described in these activities in his Adult Function Report or in his hearing testimony was minimal. For instance, in his Function Report he stated that his son's school was "nearby" his home; he makes only "small light meals, a little rice and 1 course[] dish[es]"; he washes dishes but it takes him "longer than before" due to his symptoms and his wife often helps; and he only shops for necessities and, even then, "not often." [AR at 171-73.] Here, the ALJ neither made specific findings nor pointed to any record evidence to support his conclusion that plaintiff's daily activities as plaintiff described them were somehow incompatible with the severity of the symptoms alleged by plaintiff.[10] See id. Indeed, nothing in plaintiff's descriptions of his activities would permit an inference that plaintiff could sit any more than 10 to 15 minutes at a time, walk more than one block, or lift more than 10 pounds, or that he had no difficulty bending, stooping, and holding objects for a long time, as he testified to at the hearing. Plaintiff's reported level of activity clearly *does* reflect that he has difficulties in

---

[10]   As the Bjornson court noted, a person has more flexibility in scheduling daily activities than in scheduling job activities, and is not held to a minimum standard of performance in daily activities. Bjornson, 671 F.3d at 647. The court went on to observe that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." Id.

performing his daily activities.

As in <u>Brown-Hunter</u>, the ALJ here "simply stated [his] [subjective symptom testimony] conclusion and then summarized the medical evidence supporting [his] RFC determination." <u>Brown-Hunter</u>, 806 F.3d at 494. Although the ALJ also summarized plaintiff's daily activities, he did not identify the testimony he found not credible, and "link that testimony to the particular parts of the record" supporting his determination to discount plaintiff's subjective symptom testimony. <u>Id.</u> In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. <u>Id.</u> (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony [he] found not credible, and never explained *which* evidence contradicted that testimony") (citing <u>Treichler</u>, 775 F.3d at 1103; <u>Burrell</u> 775 F.3d at 1138).

Accordingly, the ALJ's finding that plaintiff's reported daily activities were somehow incompatible with his allegations that he "could not sit or stand in one position without feeling [heel and back] pain and wrist pain," or that they described "normal activities" that were somehow reflective of full-time employment, was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony.

### 5.    Conservative Treatment History

The ALJ also discounted plaintiff's allegations because he "has not generally received the type of wrist and back treatment one would expect for a totally disabled individual," and has received only conservative treatment in the form of "trigger point injections, ibuprofen, and gabapentin." [JS at 14.]

Plaintiff argues that the ALJ failed to explain why plaintiff must be a "totally disabled individual," in light of the fact that he also acknowledged that plaintiff would be considered totally disabled if limited to light work. [JS at 5 (citing AR at 14, 36).] Specifically, he submits that "[l]ight

work is substantially different from 'total' disability," and it was improper for the ALJ to "require total disability for [plaintiff] to be credible when he is disabled with a limitation to light work."  [JS at 6.] He also argues that the ALJ mischaracterized plaintiff's injections as conservative treatment.  [Id. (citations omitted).]  Plaintiff states that the ALJ failed to ask plaintiff about his treatment, and submits that the ALJ is not qualified to determine "what treatment is appropriate, or conservative, and there was no evidence in record from a medical source indicating what treatment should have been performed."  [Id. (citation omitted).]

Defendant argues that the ALJ considered the treatment options plaintiff had received, including "chiropractic care, physical therapy, aquatic therapy, deep breathing exercises, trigger point injections, a wrist brace, heel clips and recommendations for home exercise."  [JS at 16 (citations omitted).]  Defendant notes that epidural and trigger point injections "are a relatively simple, straightforward procedure, that [are] usually performed in an office based procedure suite or in an ambulatory surgical center."  [JS at 16 & n.3.]  Defendant also suggests that despite plaintiff's claim "not to know what other types of treatments the ALJ is referring to, that might suggest greater impairment and limitations for Plaintiff's wrist and back pain," plaintiff "is not stripped of common sense; carpal tunnel surgery, back surgery, strong narcotic medications, and trips to the emergency room are reasonable examples of greater treatment."  [JS at 17.] Defendant concludes that "no medical provider prescribed anything more aggressive tha[n] a trigger point injection and Gabapentin."  [Id.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti, 533 F.3d at 1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Here, however, the ALJ failed to articulate what, if any, treatment "one would expect for a totally disabled individual" with plaintiff's impairments and symptoms -- albeit one who, even if he could perform light work, would be considered disabled based on other factors as discussed previously. Defendant's suggestion that in order to be considered disabled an individual must undergo surgery, take strong narcotic medications, and regularly visit the emergency room is unsupported. Indeed, the Court is unaware of any authority suggesting that surgery, emergency room visits, and the taking of strong (and potentially addictive) medications are prerequisites to finding a claimant's subjective symptom allegations credible. See Sandberg v. Comm'r of the Soc. Sec. Admin., 2015 WL 2449745, at *6 (D. Or. May 22, 2015) (stating that there is no precedent to suggest "that a cocktail of prescription drugs is conservative treatment simply because the patient has not checked into a mental health facility"). The ALJ pointed to no evidence in the record that anything else had been recommended for plaintiff by a physician or was warranted for his conditions. Neither did he point to any evidence reflecting that the treatment had been totally (or even reasonably) effective in controlling plaintiff's pain. He also failed to point to anything in the record to show that any specific treatment, other than the treatment plaintiff was receiving, is a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments.

Additionally, many courts have found that epidural injections are not considered to be "conservative" treatment. See, e.g., Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative). More importantly, as noted by plaintiff, the Ninth Circuit has itself indicated that epidural steroid shots do not qualify as "conservative" medical treatment. See Garrison, 759 F.3d 995, 1015 n.20 (stating, "[i]n any event, we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Revels, 874 F.3d at 667 (noting that Revels had received facet and epidural injections in her neck and back,

and steroid injections in her hands, and observed that the Ninth Circuit had previously doubted that epidural shots qualify as conservative medical treatment) (quoting Garrison, 759 F.3d at 1015 n.20). Although defendant suggests that facet and epidural injections are simple and straightforward procedures and, therefore, should be considered to be "conservative" treatment [JS at 16 n.3], the Court does not equate "simple" and "straightforward" with "conservative" and, instead, finds Garrison and Revels to be persuasive.

Finally, the ALJ's suggestion that plaintiff's treatment was limited to trigger point injections, ibuprofen, and gabapentin, is misleading. The record also shows that plaintiff received or was recommended to receive the following treatment or medications: acupuncture [AR at 214, 247]; orthotics for bilateral plantar fasciitis heel pain [AR at 242]; chiropractic back treatments [id.]; aquatic therapy [AR at 251]; numerous trigger point injections [AR at 253 (noting 6 injections in the thoracic and lumbar muscles); 257 (noting 6 injections in the thoracic and lumbar muscles); 275 (noting 6 injections in the thoracic and lumbar muscles); 283 (noting 6 injections in the thoracic, lumbar paraspinal, and gluteal muscles); 298 (noting that plaintiff refused injection therapy because "he could not afford the co-pay for the procedure")]; epidural steroid injection to the lumbar spine [AR at 253, 257]; cortisone injection in the right wrist considered [AR at 298]; deep breathing exercises [AR at 254]; the opiod pain reliever Tramadol, mirtazapine, naproxen, and tizanidine (for muscle spasms) [AR at 261, 270]; physical therapy [AR at 283, 298]; wrist braces [AR at 286]; and pain management referral. [AR at 286, 296-97.] In addition, there is a notation in a March 5, 2013, treatment note that right knee surgery had previously been authorized, and that plaintiff had been reluctant to undergo surgery at that time, but "is now agreeable . . . and authorization for arthroscopic surgery to the right knee is again requested . . . ." [AR at 261.]

Based on the above, the ALJ's finding that plaintiff's treatment had been conservative was not a specific, clear and convincing reason supported by substantial evidence for discounting plaintiff's subjective symptom testimony.

### 6. Conclusion

None of the reasons given by the ALJ for discounting plaintiff's subjective symptom testimony was specific, clear, and convincing and supported by substantial evidence. Remand is warranted on this issue.

## B. MEDICAL OPINIONS

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine, 574 F.3d at 692; see also 20 C.F.R. §§ 404.1502, 404.1527.[11] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo, 871 F.3d at 675 (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray, 554 F.3d at 1221, 1227); Turner, 613 F.3d at 1222. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d

---

[11]  The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician.  Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct."  Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations).  Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2.    Dr. Ali

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Ali, plaintiff's treating neurologist and pain management specialist, who treated him for his workers' compensation claim.  [JS at 22, 33.]  He further contends that the ALJ failed to mention Dr. Ali's treatment notes, which "alone is reversible error because the ALJ must mention this evidence."  [JS at 22 (citing Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015)).]  He also argues that

the ALJ failed to consider Dr. Ali's area of specialization when he addressed his opinion.   [Id.]
Plaintiff states that the ALJ improperly rejected Dr. Ali's opinion when he "stat[ed] in total," the
following:

> [T]he undersigned does not adopt Dr. Ali's opinion that [plaintiff] can lift 15 to 20
> pounds because [he] had some deficits of the right hand and no deficits of the left
> upper extremity.

[JS at 24 (citing AR at 16).]  Plaintiff submits that the ALJ never explained why plaintiff "had to
have a left upper extremity limitation to make Dr. Ali's opinion credible," and never addressed Dr.
Ali's finding that plaintiff should have "no repetitive use of the right upper extremity."  [JS at 24, 33.]

Defendant contends that the ALJ's decision "clearly shows" that the ALJ considered Dr.
Ali's treatment notes, clinical findings, results of diagnostic studies and recommendations for
treatment. [JS at 26.] Defendant argues that although long-standing case law admittedly requires
an ALJ to consider such factors as nature, extent, and length of the physician-patient working
relationship, the frequency of examinations, whether the physician's opinion is supported by and
consistent with the record, and the specialization of the physician, an ALJ is "not required to
expressly discuss each factor," only to *consider* those factors, and "there is nothing in the decision
to suggest that the ALJ did not consider Dr. Ali's role as a treating physician or pain specialist."
[Id. (citing Ghanim, 763 F.3d at 1161).]  Defendant accuses plaintiff of "playing fast and loose with
the record" by suggesting Dr. Ali precluded plaintiff from repetitive use of the right upper extremity,
because Dr. Ali only precluded "repetitive wrist movements," which the ALJ acknowledged.  [JS
at 27 (citing AR at 16, 254).]  Defendant states, therefore, that the ALJ did not *reject* Dr. Ali's
limitation for no repetitive wrist movements, but "reasonably *translated* the limitation into a work
restriction for frequent (rather than constant) gross manipulations with the right arm."  [JS at 27
(emphasis added) (citing AR at 13; Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-76 (9th Cir.
2008)).]

The ALJ summarized Dr. Ali's treatment notes as follows:

> From October 2012 to January 2013, [plaintiff] was seen by [Dr.] Ali . . . due to
> complaints of pain and numbness of right hand/wrist/thumb/index finger and low
> back pain that radiated to right leg.  The examinations revealed positive Tinel's sign

and pain to palpation of the right wrist; slightly restricted lumbar range of motion; absence of ataxia in the upper and lower extremities; normal heel-toe and tandem gait; decreased sensation to fine touch and pinprick in the first, second, and fifth digits of the right hand; 4/5 strength of the right hand; slightly decreased range of motion of the right wrist; [and] multiple myofascial trigger points throughout lumbar paraspinal musculature and gluteal. For further evaluation, Dr. Ali ordered diagnostic studies. The MRI of the right wrist, dated February 28, 2012 demonstrated evidence of mild osteonecrosis of the carpal bones and fluid in radionavicular space and the MRI of the lumbar spine from April 24, 2013 showed spine 7 mm disc extrusion at L5-S1 causing occlusion of the exiting neural foramen on the left; and bony hypertrophy of the articular facets. Dr. Ali conservatively treated [plaintiff] with trigger point injections to the thoracic spine, lumber spine, and gluteal muscles, ibuprofen, and a wrist brace.

. . . .

In October 2012 and January 2013, Dr. Ali opined [plaintiff] cannot lift above 15 pounds; he cannot do prolonged standing or walking; and he cannot perform repetitive wrist movements. In April 2013, he was of the opinion that [plaintiff] cannot lift more than 20 pounds and repetitively bend or stoop. The undersigned has given some weight to Dr. Ali's opinion that [plaintiff] has some limitation with wrist movement, bending, and stooping because it is consistent with the objective evidence. However, the undersigned does not adopt Dr. Ali's opinion that [plaintiff] can lift 15-20 pounds because [plaintiff] had some deficits of the right hand and no deficits of the left upper extremity.

[AR at 14-15, 16 (citations omitted).] He also stated that after "[g]iving due consideration to objective evidence of decreased grip strength of the right hand with decreased right wrist range of motion and degenerative changes of the right wrist," he found plaintiff "restricted to frequent gross manipulations with the right upper extremity." [Id.]

First, although the ALJ mentions that Dr. Ali determined plaintiff "cannot perform repetitive wrist movements," and "cannot lift more than 20 pounds," and states that he has given "some weight" to Dr. Ali's opinion that plaintiff has "some limitation" with wrist movement, bending, and stooping, he nevertheless determined that plaintiff can *frequently* stoop, *frequently* perform gross manipulations with his right upper extremity, and *frequently* lift and carry more than 25 pounds. [AR at 16.] Dr. Ali, however, did not find "some limitation" with right wrist movement, bending, or stooping, or with standing and/or walking; instead, he entirely *precluded* plaintiff from repetitive wrist movements, as well as from repetitive stooping, repetitive bending (which the ALJ did not mention in his RFC determination), and prolonged standing and/or walking. [AR at 13.] Although the ALJ gave "some" weight to Dr. Ali's opinion on these activities, he merely limited plaintiff to "frequent" gross manipulation with his right upper extremity and "frequent" stooping -- which the

regulations contemplate to mean occurring from 1/3 to 2/3 of the time (see Soc. Sec. Ruling 83-10) -- as well as to six hours of standing and/or walking in an 8-hour workday, without explaining why he was discounting Dr. Ali's opinions.

Second, although the ALJ stated that he gave Dr. Ali's opinion "some weight," he did not specifically address Dr. Ali's opinion that plaintiff was precluded from repetitive right wrist movements. Instead, he determined that plaintiff could "frequently perform gross manipulations with the right upper extremity." [AR at 13.] The Court notes that Dr. Ali was plaintiff's treating Workers' Compensation physician. [See, e.g., AR at 276-85; JS at 33.] By failing to address the limitations found by Dr. Ali, the ALJ also necessarily failed to translate the opinion into the Social Security context. See Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (decision was not supported by substantial evidence because the ALJ had not adequately considered definitional differences between the California workers' compensation system and the Social Security Act). Indeed, numerous cases in the Ninth Circuit have (1) found that the term "repetitive" in the Workers' Compensation context is a "term of art" that indicates a 50% loss of function, and (2) held that the ALJ must address and incorporate the meaning of the term "repetitive" in a Social Security disability opinion. See, e.g., Renteria v. Berryhill, 2017 WL 39951110, at *5 (C.D. Cal. Sept. 7, 2017) (citing cases); [see also JS at 33]. "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002). Here, notwithstanding defendant's suggestion that the ALJ "reasonably translated the limitation [to no repetitive wrist movement] into a work restriction for frequent (rather than constant) gross manipulations with the right arm" [JS at 27], there is no indication that this is what the ALJ did, or that it was indeed "reasonable" to do so. Because the ALJ ignored Dr. Ali's opinion that plaintiff should not do work involving repetitive wrist movement with his right upper extremity, and failed to explain the basis for that rejection, the ALJ erred. And, the error is not harmless. When the ALJ asked the VE whether an individual with plaintiff's RFC

limitations but with occasional postural limitations[12] and occasional gross manipulation with the dominant right upper extremity, the VE testified that the individual could not do plaintiff's past work and that there were no transferable skills. [AR at 36.] It was at this point that the ALJ suggested he would then have to "look to the GRIDS," which, as noted by plaintiff, would result in a finding of disability. [Id.]

Finally, the ALJ's determination not to adopt Dr. Ali's 20-pound (or less) lifting limitation in favor of finding plaintiff able to lift 25 pounds frequently and 50 pounds occasionally because plaintiff "has some deficits of the right hand and no deficits of the left upper extremity," is not entirely clear and, therefore, does not provide any insight into why Dr. Ali's opinion was rejected. Therefore, this was not a specific and legitimate reason for rejecting that opinion.

Remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or

---

[12]   To the extent, if any, that the ALJ should have "translated" Dr. Ali's finding that plaintiff cannot do prolonged standing or walking, or his finding precluding plaintiff from repetitive bending or stooping, he should do so on remand. See Rocha v. Astrue, 2012 WL 6062081, at *2 (C.D. Cal. Dec. 3, 2012) (if there are terms of art utilized in the workers' compensation context, "such as 'repetitive,' 'prolonged,' or similar terms, it is the job of the ALJ to translate the meaning of such terms into the Social Security context").

misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Ali, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Ali. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Based on his reevaluation of the medical evidence and plaintiff's subjective symptom testimony, the ALJ shall reassess plaintiff's RFC and proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform his past relevant work or any other work existing in significant numbers in the regional and national economies. See Shaibi v. Berryhill, 883 F.3d 1102, 1110 (9th Cir. 2017). /

/

/

/

/

/

/

/

/

/

/

/

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 14, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE